IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FLOYD WALLACE<br><br>*Plaintiff,*<br>vs.<br><br>HEATHER TAYLOR, in her individual and official capacities,<br>JAMES HARTLEY, in his individual and official capacities,<br><br>BRANDON LOPEZ in his individual and official capacities, and<br>TYSON HAMILTON, in his individual and official capacities,<br>CITY OF TOMBALL,<br><br>*Defendants,* | Case No.: 4:22-cv-00292<br><br>Plaintiffs Response in Opposition to Defendants' Motion to Dismiss<br><br>Jury Trial Demanded Herein |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION'S TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW,** Plaintiff Floyd Wallace, in *propia persona* in the above-titled cause, hereby files this, his Response in Opposition to Defendants' 2nd Motion to Dismiss per Rule 12(b)(6) and would show this court as follows:

### I. SUMMARY

1. Plaintiff filed a claim for civil rights violation § 1983 relating to an 2/21/21 encounter with City of Tomball police officers.

2. On the aforementioned date, at approximately 6:00 p.m., WALLACE, an African American, was openly wearing his body cam video recording device and recording the exterior of the Tomball Police Department, located in Tomball,

3. WALLACE, after looking at the police tower, a portable surveillance tower, in the parking lot ran a short distance across the parking lot and then began to walk to other areas of the Police Station. He was encountered by TAYLOR then HAMILTON, HARTLEY, and LOPEZ.

4. TAYLOR, who asked WALLACE to come talk to her was refused by WALLACE and he continued to walk away. WALLACE was then stopped and detained by the remaining three officer defendants. These officers during the detainment searched WALLACE'S pockets and coat, seized his cell phone recording device while he was recording the encounter, exceeded the Terry Stop limits by reaching into his pockets and searching for any form of government issued Identification.

5. The defendant officers' investigation bore out that WALLACE had committed no crime regarding any vandalism and there was no reasonable suspicion of him in process of committing any crime. Despite this, LOPEZ and TAYLOR arrested WALLACE for evading arrest when he was not under arrest and for a secondary charge after arrest for failing to identify himself to the officers. The following morning, the local judge held in the hearing that there was insufficient probable cause to hold WALLACE and the State's case was dismissed[1].

6. Plaintiff alleges that through the actions of the Defendants his 1st, 4th, and 14th amendment rights were violated.

///
///
///
///

---

[1] *See* ECF No. 12 Ex. 4.

## II. MEMORANDUM OF POINTS AND AUTHORITIES
### a. LEGAL STANDARD MOTIONS TO DISMISS

7. Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.

8. A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges a complaint's compliance with the pleading requirements of the Federal Rules. In reviewing a motion brought pursuant to Rule 12(b)(6), the reviewing Court 'accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff.' " *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016) (quoting *Toy v. Holder*, 714 F.3d 881, 883 (5th Cir. 2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." " *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the Court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by FRCP 8(a)(2). *Id.* at 677, 679 (explaining that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). *Id.* Moreover, a complaint will not be dismissed merely because it contains an "imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 135 S. Ct. 346, 346, 190 L.Ed.2d 309 (2014).

///

9. Further, in considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)

### b. INDIVIDUAL DEFENDANT'S MOTION TO DIMISS

10. The individual Defendants in their motion[2], essentially state that Defendant Taylor's reasonable suspicion to stop Plaintiff rested upon three (3) factors, (1), she saw Plaintiff crouching behind vehicles in a parking lot near a police radio tower, (2), a tire was alleged to have been found deflated sometime after, and (3), Plaintiff Wallace made a short run away from Defendant Taylor's direction before she told Plaintiff that she wanted to talk to him.

11. Regarding the Defendants' baseless second contention that the tire had been found sometime *later* to be deflated, the video shows however that neither tire was deflated[3]. Further, it is important to notice that at this stage of litigation the Court cannot consider extraneous assertions not found in pleadings or attachments thereto. *See Collins v. Morgan Stanley Dean Witter supra*

12. The reason stated for the alleged stop was that Plaintiff Wallace was near a police radio tower parked in a parking lot and crouching near it as well. Sometime after the Plaintiff initiated videotaping he ran a short distance out of the parking lot onto a public sidewalk, it was there he was confronted by Defendant Taylor.

///
///
///

---

[2] *See* ECF No. 15, Pg.5, ¶11-12.
[3] See ECF No.12 Ex. 1. at, 0:20-1:00

13. However, Plaintiff Wallace, after Defendant Taylor told him to come to where she was and talk to her, remained stationary. It wasn't until Defendant Taylor made a call on her personal radio for additional officers at the scene that Plaintiff heard sirens and attempted to walk away while stating that he didn't have time for such an encounter. Ultimately there was found to be no probable cause to hold him for violation of Tex. Penal Code Ann. § 38.04(a)[4].

14. Regardless, Defendant Taylor was required by the Fourth Amendment to have an articulable suspicion of criminal activity before she initiated the stop on Plaintiff Wallace. Reasonable suspicion must exist *before* the initiation of an investigatory detention. *See United States v. Monsivais*, 848 F.3d 353, 359 (5th Cir. 2017). Further the US Supreme Court has rejected the *per se* rule that "flight is ... necessarily indicative of ongoing criminal activity," *Illinois v. Wardlow*, 528 U.S. 119, 126–27, 120 S. Ct. 673, 677, 145 L. Ed. 2d 570 (2000), stating further that "[t]he concept of reasonable suspicion ... is not readily, or even usefully, reduced to a neat set of legal rules," but must be determined by looking to "the totality of the circumstances—the whole picture," *United States v. Sokolow*, 490 U.S. 1, 7–8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)

15. As seen in the video Defendant Taylor states at one time, a tire looked deflated, another time she didn't know what he was doing, and another time she states that if Plaintiff had told her what he was doing he wouldn't have been in trouble. Her statements are conflicting as to why she had stopped him at the onset, however she makes clear in her motion it was related to the police radio tower and the allegedly deflated tire, in that instance as soon as a reasonable officer could determine there was no damaged tires nor a damaged police tower (which should have been immediately) Plaintiff Wallace should

---

[4] *See* ECF No. 12 Ex. 4.

Plaintiffs Response in Opposition to Def. Motions to Dismiss          Page          5

have been released. *See Johnson v. Thibodaux City*, 887 F.3d 726, 734 (5th Cir. 2018) (investigative detention that "lasted longer than necessary to effect the purpose of the stop" was unlawful); *United States v. Valadez*, 267 F.3d 395, 398 (5th Cir. 2001) ("[O]nce an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion."); *see also Fla. v. Royer*, 460 U.S. at 498, 103 S.Ct. 1319 (a person "may not be detained even momentarily without reasonable, objective grounds for doing so").

16. Even assuming arguendo if Plaintiff Wallace in crouching near a police radio tower and making a brief run--away from the parking lot before a police encounter was initiated gave Defendant Taylor reasonable suspicion to detain him, once again the Fourth amendment made clear she could not detain him a moment longer than to verify or dispel her suspicion. *See Johnson v. Thibodaux City supra* (citation omitted)

17. After the Defendant Officers had their alleged suspicion of Plaintiff damaging a police radio tower dispelled, instead of releasing him, Plaintiff was informed that Defendant Taylor called the prosecutor and was looking to find grounds to arrest him, such as evading detention or arrest. However, Plaintiff Wallace was not lawfully detained or under arrest when he attempted to walk away from the Defendants."[a] person commits an offense if he intentionally flees from a person he knows is a peace officer ... attempting *lawfully* to arrest or detain him." Tex. Penal Code Ann. § 38.04(a) (West 2016); *Griego v. State*, 345 S.W.3d 742, 749 (Tex. App.–Amarillo 2011, no pet.) (emphasis added)

18. As demonstrated in the foregoing, Defendants' reasonable suspicion was absent, therefore the Defendant Officers also lacked probable cause to arrest Plaintiff Wallace. As a reasonable officer would not have concluded that, when he lacked reasonable suspicion that Plaintiff Wallace engaged in criminal

activity when he briefly attempted to walk away from the Defendants. Standing alone, a suspect's attempt to walk away or flee from a police officer is generally not sufficient to create probable cause, even if the suspect flees in a high crime neighborhood. *See United States v. Vasquez,* 534 F.2d 1142, 1145 (5th Cir.) Likewise simply avoiding contact with police when they lack reasonable suspicion of a crime, is not a punishable offense. "The gravamen of the offense is the evasion of an arrest, not the evasion of a police officer." *See Jackson v. State,* 718 S.W.2d 724, 726 (Tex.Crim.App.1986).

19. Probable cause for a warrantless arrest exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. *See Harper v. Harris County,* 21 F.3d 597 (5th Cir.1994).

20. Defendant Taylor with her vehicle's lights on, near a police station, never informed Plaintiff that he was detained nor that he was not free to leave. She further mitigated any potential belief that Plaintiff Wallace was being detained or arrested by stating that she merely wished to talk[5]. Once Plaintiff heard the sirens of additional police vehicles approaching, he opted to walk away, and was not told once by any of the officers to stop. Further, once additional officers arrived and informed him he was being detained, he made no effort to leave the scene.

///

///

///

---

[5] *See* ECF No.12 Ex. 1. Officer Taylor told Wallace to "come here come talk to me" and explain to her what he was doing behind the tower. (at, 4:30-5:00).

21. Simply asking Plaintiff to participate in conversation was less than the show of authority needed to inform him he was being detained. In contrast, *See Griego v. State*, 345 S.W.3d 742, 755 (Tex. App. 2011) 'It was after appellant got out of the car and after the officers ordered him to stop that appellant knew the officers wanted to arrest or detain him. His continued effort—albeit atypically unenthusiastic—to continue on his way to the residence in spite of the officers' orders was sufficient to show that appellant evaded arrest or detention.'

22. Further, regarding the Defendants' use of unpublished Texas Appellate Court of Criminal Appeals decisions[6] in support of Defendant Taylor's contention that a reasonable officer would rely on them, appellate rules of Texas have clearly established that such decisions are neither binding precedent or meant to be used persuasively. Unpublished opinions of the Court of Criminal Appeals have no precedential value and must not be cited as authority by counsel or by a court. Tex. R. App. P. 77.3; *Skinner v. State*, 293 S.W.3d 196, 202 (Tex. Crim. App. 2009). Though courts may cite an unpublished opinion of the Court of Criminal Appeals to show the procedural history of the case, courts may not use an unpublished opinion from the Court of Criminal Appeals as authority of any sort, whether binding or persuasive. Tex. R. App. P. 77.3; *Skinner*, 293 S.W.3d at 202 & n.19.

///

///

///

---

[6] *See* ECF No. 15, Pg. 7-8, ¶17-18, Defendants' use of the cases: *Cash v. State*, 07-17-00173-CR, 2017 Tex. App. LEXIS 11769, *3, 2017 WL 6614270 (Tex. App.—Amarillo 2017, no pet.) (not designated for publication) and also, *Graves v. State*, No. No. 01-19-00868-CR, 2020 Tex. App. LEXIS 9846 *2, 2020 WL 7349101 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (not designated for publication). References to the preceding cases were also lacking in citations as the Defendants' did not indicate they were unpublished in their brief.

23. Therefore a reasonable officer would not be informed by decisions that are not precedential nor persuasive, as simply telling a suspect they wish to talk falls short of a show of authority. "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." *See Dunaway v. New York,* 442 U.S. 200, 210 n. 12, 99 S.Ct. 2248, 2255 n. 12, 60 L.Ed.2d 824 (1979)

24. Regarding Defendants' contention that they can conduct a frisk for weapons as part of a routine *Terry* stop, they are mistaken. *Terry* and its progeny have carefully distinguished the two and emphasized the different justifications for each. A brief investigative *detention* is authorized once an officer has a reasonable suspicion to believe that an individual is involved in criminal activity. *See Terry v. Ohio,* 392 U.S. at 27, 88 S.Ct. at 1883 However, the "exigencies" which permit the additional *search* are generated strictly by a concern for the safety of the officers. *See Terry,* 392 U.S. at 25–26, 88 S.Ct. at 1882; *see also id.* at 29, 88 S.Ct. at 1884, thus law enforcement personnel may conduct a limited search for weapons of a suspect's outer clothing, even in the absence of probable cause, where an officer reasonably believes that the suspect is armed and dangerous. *See Terry,* 392 U.S. at 27, 88 S.Ct. at 1883; *Davis v. State,* 829 S.W.2d 218, 220 (Tex.Crim.App.1992).

25. Here there is nothing to suggest the officers feared for their safety and thus were not justified in searching Plaintiff Wallace for weapons pursuant to a *Terry* stop. Therefore they are liable for the unlawful frisk for weapons and search of Plaintiff's Person. *See Royer,* 460 U.S. 491, 499, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229 Detentions may be "investigative" yet violative of the Fourth

Amendment absent probable cause. In the name of investigating a person who is no more than suspected of criminal activity, the police may not carry out a full search of the person or of his automobile or other effects. Nor may the police seek to verify their suspicions by means that approach the conditions of arrest. In short, Defendants conflate a Terry stop with a stop and frisk for weapons, each type of detention has strictly defined limitations. Reasonable suspicion to conduct a Terry stop does not confer the authority to conduct an exigent search of a suspect's person and property[7].

26. Additionally, by placing Plaintiff in handcuffs and seizing his phone the Defendants' intended to limit his recording of their activities while engaged in performance of their duties; such activity enjoys protection by the First Amendment. See *Turner v. Lieutenant Driver*, 848 F.3d 678, 688 (5th Cir. 2017) "We conclude that First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions."

27. Finally the Defendants' contend that Plaintiff's malicious prosecution claim is frivolous as the fifth circuit doesn't recognize a malicious prosecution claim *per se*. See *Castellano v. Fragozo*, 352 F.3d 939, 945, 953 (5th Cir. 2003)

---

[7] The Defendants' also contend that pursuant to *United States v. Brown*, 366 F.3d 456, 461 (7th Cir. 2004), that police in this circuit may check suspects wallets for identification during the course of a *routine* Terry stop. However, a recent case, and one relied upon by the Defendants', clearly stated that retrieval of a wallet was for identification of an arrestee and thus the wallet search was valid as it only took place *after* McCullough was arrested for interference with public duties. See *McCullough v. Wright*, 824 F. App'x 281, 287 (5th Cir. 2020). The other case(s) the Defendants' rely upon while not necessarily mandatory precedence in this circuit, involved either an arrest or a search conducted lawfully with the reasonable belief the suspect was armed and dangerous, therefore the Defendants' have not demonstrated how a search and subsequent obtainment of ID in a routine *Terry* stop lacking such suspicion is lawful. See *United States v. Hernandez-Rivas, 348 F.3d 595, 599 (7th Cir. 2003)* Similarly, the deputies were authorized to conduct a pat-down search of Hernandez–Rivas under *Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)* as he was believed to be armed and dangerous. Like *Brown* (which relied upon *Rivas*), *Rivas* involved the doctrine of *Terry* searches, which allows an officer to conduct a pat-down search if the officer has articulable facts that led him or her to believe that the individual could be armed or present a threat to others.

(en banc) This Court has held that although there is no "freestanding constitutional right to be free from malicious prosecution," "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example." *see also Winfrey v. Rogers, 901 F.3d 483, 491 (5th Cir. 2018)*

28. Therefore a malicious prosecution claim brought pursuant to §1983 is merely improperly pleaded where, as here, it involves an underlying Fourth Amendment claim, and thus in this instance Plaintiff's proper cause of action is a claim for false arrest. *See also Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).* Thus merely stating an imperfect legal theory will not enable dismissal of Plaintiff's complaint. *See Johnson v. City of Shelby supra (citation omitted).*

### c. DEFENDANT CITY OF TOMBALL'S MOTION TO DIMISS

29. To find a municipality liable under § 1983, a plaintiff must establish that (1) a policymaker (2) promulgates a policy or custom (3) that is the "moving force" of a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.' " *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *288 *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001)). The policy must be either unconstitutional or "adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Id.* (internal quotation marks omitted).

30. Failure to train may represent a policy for which the city may be held liable only if it directly causes injury. *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The fact that an officer could be "unsatisfactorily trained" is not enough to trigger the municipality's liability. *Id.* at 390–91, 109 S.Ct. 1197. The plaintiff must show that (1) the training policy was deficient, (2) the County was deliberately indifferent to this deficiency in adopting the policy, and (3) the deficient training policy directly caused the constitutional violation. *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2018).

31. However, sufficient proof to find a policy maker ultimately liable under §1983 is a different standard than that needed at the pleading stage to overcome a motion made pursuant to Rule 12(b)(6). *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability"); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)

32. In its Motion Defendant CITY OF TOMBALL essentially makes three points for dismissal in its protracted brief, (1) Wallace has alleged no facts showing plausible entitlement to relief[8], (2), Wallace has not plead any widespread custom of similar instances, even in conclusory form[9], and (3) Wallace did not allege that the City failed to provide training at all to its officers[10].

///

///

---

[8] *See* ECF No. 14, Pg.7, ¶21.
[9] *See* ECF No. 14, Pg.9, ¶25.
[10] *See* ECF No. 14, Pg.12, ¶30.

33. In the instant case, Plaintiff has provided a significant amount of detail in the form of exhibits which are part of the general factual allegations that support his complaint.

34. Plaintiff Wallace alleges that he was detained and arrested without probable cause as the Defendants knew he was not engaged in the act of committing a crime[11]. Further as demonstrated in this brief the facts show that the officers lacked an objective reasonable suspicion of criminal activity on Plaintiff Wallace's part when they detained him. Further Plaintiff has alleged it was due to the practices of the CITY OF TOMBALL[12].

35. As such Plaintiff Wallace is only required to plead facts. *See Groden v. City of Dallas, Texas*, 826 F.3d 280, 285 (5th Cir. 2016) Thus, to survive a motion to dismiss, Groden needed only to plead facts—facts which establish that the challenged policy was promulgated or ratified by the city's policymaker. *See also Johnson*, 135 S.Ct. at 346 "...courts should not grant motions to dismiss § 1983 cases "for imperfect statement of the legal theory," we see that courts should not grant motions to dismiss for failing to plead the specific identity of the policymaker. *See Johnson*, 135 S.Ct. at 346

36. If the underlying facts were lacking, which is all that is required of Plaintiff Wallace at the pleading stage, he should be given leave to add them. *See* Fed. Rule Civ. Proc. 15(a)(2) "The court should freely give leave [to amend a pleading] when justice so requires."

///

///

///

///

---

[11] *See* ECF No.12, Cause 1 Unreasonable Seizure alleging Defendants' had no probable cause.
[12] *See* ECF No.12, Cause 5, ¶48: Through the training and supervision practices of TOMBALL, the officers wrongfully detained WALLACE in order to illegally determine his identity.

## III. CONCLUSION

Wherefore, Plaintiff Wallace has clearly demonstrated that the causes of action are supported with the facts, and the exhibits attached to Plaintiff's First Amended Complaint, apart from Plaintiff's merely improperly pleaded fourth cause of action of malicious prosecution, as it should be brought pursuant to the Fourth Amendment as discussed in brief above. Plaintiff respectfully requests that the Defendants' Motion be denied in its entirety as discussed in this response, so that this case can proceed and be decided on the merits.

DATED this 17 day of June, 2022.

*Floyd Wallace*
Signature

Floyd Wallace
829 Park Ave.
Apt. 3
Omaha, NE 68105
(531) 232-1483
Email: tim69726@gmail.com
*In Proper Person*

# CERTIFICATE OF SERVICE

I, Floyd Wallace, Plaintiff in this matter, do hereby certify that, on the date set forth below, the foregoing document was filed in the captioned court and served upon the following defendants via email and/or regular mail:

Ramón G. Viada III
State Bar No. 20559350
S.D. I.D. 10689
rayviada@viadastrayer.com
17 Swallow Tail Court
The Woodlands, Texas 77381
(281) 419-6338
**ATTORNEY FOR DEFENDANTS
CITY OF TOMBALL,
OFFICER HEATHER TAYLOR,
OFFICER JAMES HARTLEY, AND
OFFICER TYSON HAMILTON**

Dated: June __, 2022

_Floyd Wallace_
Signature

Floyd Wallace
829 Park Ave.
Apt. 3
Omaha, NE 68105
(531) 232-1483
Email: tim69726@gmail.com
*In Proper Person*